23 N.J. Super. 453 (1952)
93 A.2d 52
SAYRE & FISHER BRICK COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
WILLIAM J. DEARDEN, AS ACTING DIRECTOR OF DIVISION OF MOTOR VEHICLES OF STATE OF NEW JERSEY, AND THEODORE D. PARSONS, AS ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 21, 1952.
*455 Mr. Theodore D. Parsons, Attorney-General of New Jersey, attorney for the defendants (Mr. John J. Kitchen, Deputy Attorney-General, appearing).
Messrs. Furst, Furst & Feldman, attorneys for the plaintiff (Mr. Louis Kraemer appearing).
WOODS, J.S.C.
The plaintiff in this matter is the holder of a chattel mortgage secured by 18 motor vehicles given by one Peter Fonsetto, dated August 20, 1952 and recorded in the office of the County Clerk for Bergen County on the same date. On that date, too, pursuant to N.J.S.A. 39:10-11 Fonsetto signed 18 statements of encumbrance affecting the 18 individual motor vehicles on the forms prescribed by the Director of Motor Vehicles, and all of the statements were also signed by the Clerk of Bergen County certifying that the chattel mortgage had been recorded by him on August 20, 1952.
*456 N.J.S.A. 39:10-11 provides as follows:
"* * * Whenever a chattel mortgage is placed on a motor vehicle it shall be recorded in the county as provided in sections 46:28-5 and 46:28-7 of the Revised Statutes, and shall also, unless it is given to secure an agricultural loan, be presented to the director with a certificate of ownership and a statement of the encumbrance on a form prescribed by the director; otherwise there shall be the same result of failure to record as provided in section 46:28-5 of the Revised Statutes. The director shall issue a new certificate of ownership recording the encumbrance thereon and shall collect a fee of two dollars ($2.00) for the issuance and filing thereof."
R.S. 46:28-5 and 46:28-7 state that unless a chattel mortgage is duly executed, acknowledged and recorded as therein provided, it shall be absolutely void as against the creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith.
In the instant case the plaintiff recorded its chattel mortgage with the county clerk after proper and correct execution, and was ready to deliver to the Director of Motor Vehicles the statements required by the statute. However, it is unable to obtain the certificates of ownership which are presently in the possession of five different financial institutions which hold conditional sales or first mortgages on the 18 motor vehicles, and therefore cannot comply with the provisions of N.J.S.A. 39:10-11.
By letter dated August 18, 1952, the Supervisor of the Certificate of Ownership Bureau of the Division of Motor Vehicles wrote the plaintiff as follows:
"In the absence of the certificate of ownership, therefore, you would not be in position to comply with the law, and the chattel mortgage lien could not be recorded with the Director of Motor Vehicles; furthermore, we wish to advise that the certificate of ownership form itself is not designed for the recording of a second lien, and this office is not equipped to handle the recording of second liens."
Again, on September 11, 1952, the Supervisor wrote the plaintiff:
"We are returning to you herewith, eighteen (18) statements of encumbrance forms received at this office with your letter of September 9th.
*457 We regret to advise that we are not in a position to follow the suggestion offered in your letter. Chapter 334, Laws of 1951, places the burden of compliance with the law upon the chattel mortgagee."
Plaintiff filed its complaint in lieu of prerogative writ and for declaratory judgment and demanded a declaratory judgment as follows:
1. That chapter 334, Laws of 1951 is unconstitutional and void as against plaintiff's mortgage.
2. That, in the alternative, chapter 334, Laws of 1951, is not applicable to a subsequent encumbrance.
3. That, in the alternative, the Division of Motor Vehicles is under the statutory duty of taking such steps as may be necessary to effect the recordation of plaintiff's mortgage on the statutory certificate of ownership form, and that the Division of Motor Vehicles and William J. Dearden, as Acting Director of the Division of Motor Vehicles, and Theodore D. Parsons, as Attorney-General of the State of New Jersey, be directed to record plaintiff's encumbrance as required by chapter 334, Laws of 1951.
The defendants move for an order dismissing the complaint filed in this cause on the following grounds:
1. Plaintiff has not complied with the statutory requirements for filing a chattel mortgage covering a motor vehicle with the Division of Motor Vehicles.
2. Plaintiff's only remedy is to review the action of an administrative agency by appeal to the Superior Court, Appellate Division, pursuant to Rule 3:81-8.
3. This court is without jurisdiction over the subject matter and without power to give plaintiff the relief requested.
The defendants motion for an order dismissing the complaint filed raises the question as to whether or not a proceeding under the Declaratory Judgments Act is available here.
"The remedial purpose of the Act is `to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations,' R.S. 2:26-67, N.J.S.A. The act merely broadens *458 the rationale of remedies long cognizable in equity * * *. To serve these ends, it is provided that `All courts of record in this state shall * * * have power to declare rights, status and other legal relations,' R.S. 2:26-68, N.J.S.A. and particularly to determine `any question of construction or validity arising under * * * (a) statute * * *,' R.S. 2:26-69. The remedy thus provided, however, is circumscribed by the salutary qualification that the jurisdiction of the courts may not be invoked in the absence of an actual controversy." New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 69 A.2d 875 (1949).
In the instant case, on the facts before us, there appears to exist an actual controversy.
The motion also raises a point of law, namely, the interpretation and constitutionality of R.S. 39:10-11. This particular problem is one upon which our courts have not spoken insofar as we are able to ascertain, nor does it appear to have come to the attention of the courts of other states, probably because similar statutes make provision for the recording and notation of second and subsequent liens, while our act is silent as to this situation. For example, the Virginia statute provides that for the purpose of recording such subsequent lien, the director may require any lienholder to deliver to the director the certificate of title, and upon issuing the said new certificate, it shall thereupon be sent or delivered to the lienholder from whom the prior certificate of title was obtained. The statutes of the States of Pennsylvania, California and Washington have similar provisions.
We must, therefore, find the answer by the application of our settled rules of statutory construction. We must try to determine the intention of the Legislature and then to observe and follow it through though there may be a conflict between its intent and the expression thereof in the act. The passage of the Motor Vehicle Certificate of Ownership Law and the amendments thereto supersedes the chattel mortgage recording laws, and the recording of a chattel mortgage lien on a motor vehicle in the county clerk's office does not furnish constructive notice to a subsequent lienholder or innocent purchaser for value. There can be no doubt but *459 that it was the intention of the Legislature to provide for a simple means for the ascertainment of liens against motor vehicles. It is a matter of common knowledge that a large number of new motor vehicles and an even larger number of secondhand motor vehicle sales take place in the course of a year's time. A large percentage are sold on credit secured by conditional sales contracts or chattel mortgages. It would be very difficult and sometimes impossible for a purchaser or a subsequent lienholder to safely guard against the purchase of an encumbered car by searching the chattel mortgage and conditional sales indices of the county clerk's office in which the purchase is made, the seller lives, or the chattel is used, for motor vehicles, being extremely mobile, can pass from county to county in a matter of minutes. Aside from the extreme mobility of this type of personal property, for a person who depended upon a search of the county indices to protect himself against prior encumbrances, it would be necessary to ascertain the name and residence of every former owner and might well necessitate the search of the records of half a dozen counties. Undoubtedly it was the intention of the Legislature to provide for a simple means for the ascertainment of liens against motor vehicles. Instead of requiring a creditor or purchaser to look for liens against a motor vehicle in many places, the fact that such liens exist could be established by looking in one place as designated by the statute, that is, the office of the Director of Motor Vehicles and the certificate of ownership. N.J.S.A. 39:10-14.
The act as a whole indicates conclusively that the Legislature believed the chattel mortgage recordation laws theretofore existing, insofar as they affected motor vehicles, were inadequate for the protection of lienholders and innocent purchasers for value. We construe the act to conclusively declare that no valid lien can be asserted against a motor vehicle unless it is disclosed by a valid certificate of ownership regularly issued by the director of the Department of Motor Vehicles, even though an asserted lien has been previously *460 filed in the office of the county clerk as provided by R.S. 46:28-5 and 46:28-7. Surely, the Legislature intended this section to apply to all liens, otherwise the statute would be without teeth. The fact that the certificate of ownership form itself "is not designed for the recording of a second lien and the office is not equipped to handle the recording of a second lien" is no excuse. It is the obligation of the Director of the Department of Motor Vehicles to provide the means and design the forms necessary to carry out his ministerial duties.
But, N.J.S.A. 39:10-11 requires that the chattel mortgage be presented to the director with a certificate of ownership. The defendants contend that the duty of presenting the director with the certificate of ownership rests upon the plaintiff (that is, the mortgagee) and cannot be shifted in any manner whatsoever to place this duty upon the Director of the Division of Motor Vehicles to obtain the certificate from the first lienholder. And yet, by the provisions of another section of this same Title, to wit: N.J.S.A. 39:10-15, the Legislature has declared the procedure and delivery of title papers upon seizure of motor vehicles:
"If a motor vehicle is seized, levied upon, or attached and taken into possession, actually or constructively, by virtue of judicial process issued by a court of competent jurisdiction in this State, or by virtue of a statute, State, Federal or otherwise, the person from whose possession the motor vehicle was taken, and without prejudice to his rights in the premises, shall surrender the title papers to the commissioner upon written notice or demand from the commissioner."
And yet, we cannot legislate. In endeavoring to apply the purpose of the statute to the accomplishment of the provisions of the section before us, we can only conclude that it is so imperfect and incomplete that it is impossible to carry out the intention of the Legislature. The result is that this paragraph of N.J.S.A. 39:10-11 is wholly ineffective and nugatory. The statute imposes duties and requirements which are not capable of performance, and therefore it is not a valid enactment. The Legislature on *461 the one hand has declared a chattel mortgage invalid as to subsequent lienholders and innocent purchasers for value for want of recordation in the county clerk's office and notation of the lien on the certificate of ownership, and on the other hand has failed to make provision for the method of putting the certificate of ownership into the hands of the Director of the Department of Motor Vehicles when it is in the possession of a first lienholder. The effect thereof is to deprive a subsequent encumbrancer of his property without due process of law. The conclusion that this paragraph of the act is unworkable is inevitable. We cite the case of Miller v. Belmont Packing & Rubber Co., 268 Pa. 51, 110 A. 802, 805 (Sup. Ct. 1920):
"The statute fails expressly to give any further remedy in the premises; but, conceding its bad draftsmanship in this regard, that does not render the legislation inoperative, if its serviceable parts are susceptible of use. * * * but we have no power to set aside any part of a statute, be it a practice act or one dealing purely with substantive law, unless the conclusion that it is either unworkable or unconstitutional is inevitable (Minisinger [Minsinger] v. Rau, 236 Pa. 327, 331, 84 Atl. 902, Ann. Cas. 1913E, 1324) and the necessity for so declaring inescapable (Mesta Co. v. Dunbar Co., 250 Pa. 472, 476, 95 Atl. 585). Even then, the court in reality, only judicially ascertains that certain apparent imperfections in the legislation under attack do in fact exist; and when these faults are thus determined, if fundamental  in that they demonstrate either the impossibility of the statute's operation or its actual conflict with the organic law  the act falls of its own weight; the judicial pronouncement of invalidity simply serving as formal, binding, general notice to that effect. * * * `Where a statute * * * is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed it will be declared inoperative; * * * An act will not be declared inoperative and ineffectual on the ground that it furnishes no adequate means to secure the purpose for which it is passed, if * * * common sense and reason can devise and provide the means, and all the instrumentalities necessary for its execution are within the reach of those intrusted therewith.' 25 R.C.L. 810 and cases there cited; Com. v. Moir, 199 Pa. 534, 544, 49 Atl. 351, 53 L.R.A. 837, 85 Am. St. Rep. 801."
We must declare this paragraph of N.J.S.A. 39:10-11 under consideration inoperative and ineffectual on the ground *462 that it furnishes no adequate means to secure the purpose for which it is passed.
Nor do we concur with the contention of the defendants that this question must be solved by an appeal to the Appellate Division of this court pursuant to Rule 3:81-8, which reads in part as follows:
"Review of the final decision or action of any State Administrative Agency shall be by appeal to the Appellate Division."
Rule 3:81-8 clearly states that review of the final decision or action of any state administrative agency shall be by appeal to the Appellate Division. Do the letters and the action of the Supervisor of the Certificate of Ownership Bureau of the Division of Motor Vehicles constitute such final decision or action as to come within the provisions of Rule 3:81-8?
Defendants argue that the plaintiff brings this action before it has complied with the statutory requirements as set out above; that there is no duty upon the Director of Motor Vehicles to obtain the certificates of ownership from the present holders in order to issue new certificates with the chattel mortgage encumbrance of the plaintiff endorsed thereon, but that such duty rests upon the plaintiff. Defendants further contend that in the instant case the plaintiff requested the defendants to file a lien and the defendants acting upon this request have refused to file the lien, and that this is an appeal from that refusal and should, therefore, be brought before the Appellate Division of this court, pursuant to Rule 3:81-8.
On the other hand, the plaintiff contends that the duty to record the chattel mortgage is merely ministerial and the recording officer is required to perform only the ministerial duty laid down by the statute. That if the Motor Vehicle Department has correctly stated that it cannot record a second, third or fourth mortgage affecting a motor vehicle because the statute makes no provision therefor, then the *463 plaintiff has no legal basis to seek a review of such refusal and must seek relief by an attack upon the constitutionality of the statute in the Law Division of this court and is entitled to a declaratory judgment of its rights so that it may not be deprived of its property without due process of law. We believe the answer can be found in the case of Rutherford Lodge No. 547 v. Hock, 1 N.J. Super. 223 (App. Div. 1949). In that case the Commissioner of Alcoholic Beverage Control rendered advisory opinions interpreting the effect of a referendum as invalidating the licenses of the appellants and the licensees appealed. They contended that the letters written by the Commissioner constituted reviewable action or decision by him under Rule 3:81-8. The court said:
"Our review of the letters of the Commissioner convinces us that he merely expressed his opinion or interpretation of the legal effect of the referendum election with respect to the club licenses held by the appellants, that these letters did not constitute a final decision or action by him and, therefore, are not reviewable."
In delivering the opinion of the court, Judge Eastwood referred to the case of Morgan v. Burnett, 121 N.J.L. 352, 2 A.2d 339 (Sup. Ct. 1938) and stated:
"Rule 3:81-8, as amended, provides that a `Review of the final decision or action of any State Administrative Agency shall be by appeal to the Appellate Division. * * *' Formerly, such a review, if allowed, was by certiorari. The basis for the issuance of a writ of certiorari to review a decision of an administrative agency was clearly defined by Mr. Justice Heher in Morgan v. Burnett * * *, wherein he stated:
"`It is the settled rule in this court that "certiorari will not lie to revise or correct erroneous opinions, however hurtful they may be to individuals concerning whom they are expressed. An order, judgment, or determination affecting the rights of prosecutors is necessary as a foundation for the use of the writ." * * * "The writ of certiorari cannot be used to draw judicial opinions in advance or to affect adjudications of subordinate tribunals." Newark v. Fordyce, 88 N.J.L. 440, 97 A. 67, 68; Livingston v. Rector, &c., of Trinity Church, 45 N.J.L. 230; Drake v. Plumo, 44 N.J.L. 362; Watson v. Medical Society of New Jersey, 38 N.J.L. 377.'" *464 The complaint in the instant case does not seek a review of any final action or decision of the Director of the Division of Motor Vehicles. It seeks a declaratory judgment as to the constitutionality of that portion of chapter 334, Laws of 1951 (N.J.S.A. 39:10-11) which requires that whenever a chattel mortgage is placed on a motor vehicle it shall be recorded in the county as provided in sections 46:28-5 and 46:28-7 of Revised Statutes, and shall also, unless it is given to secure an agricultural loan, be presented to the director with a certificate of ownership and a statement of the encumbrance on a form prescribed by the director, otherwise there shall be the same result of failure to record as provided in section 46:28-5 of Revised Statutes; and it seeks relief from the position in which the plaintiff finds itself of being unable to comply with the requirements of the statute by reason of the demands set forth in the statute itself.
A form of judgment in favor of the plaintiff determining and declaring the question of the constitutionality and the validity of that paragraph of N.J.S.A. 39:10-11 hereinbefore quoted and the rights and status of the parties thereunder, in conformity with these conclusions, and for the relief demanded in the complaint may be submitted. The motion of the defendants to dismiss the complaint is denied.